IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Peter J. Caldwell, Willie Barr, Tommy Bass, James Burnett, Rondal Briggs, Brad Britt, Joseph Coker, Lynn Cooper, Bruce Echols, McCall Ford, Roland Ford, Walter Ford, Harold Frasier, Leroy Fulton, Walter Gibson, Shelton Hawkins, Jeffery Mack, Tony Planter, Prince Pressley, Stephen Sellers, Willie Shepherd, Robert Singletary, Lindsey Timmons, <br><br> Plaintiffs, <br><br> v. <br><br> Koppers, Inc., <br><br> Defendant. | Civil Action No.: 4:13-3407-BHH <br><br> **OPINION AND ORDER** |

This matter is before the Court on the defendant Koppers, Inc.'s ("the defendant") Motion to Dismiss and to Stay Discovery. (ECF No. 13.) The case was removed from the Court of Common Pleas, County of Florence, South Carolina on December 5, 2013, by the defendant. (ECF No. 1.) In their complaint, the plaintiffs assert causes of action for breach of contact and violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq.* (ECF No.1-1.)

**FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiffs were employed by the defendant at its facility located in Florence, South Carolina. (Compl. ¶¶ 3, 4.) The plaintiffs each were members of a "bargaining unit" represented by Local Lodge No. W77 of the International Association of Machinists and Aerospace Workers. *Id.* ¶ 4. The terms and conditions of the plaintiffs' employment were covered by a Labor Agreement between the defendant and the Local W77, International

Association of Machinists and Aerospace Workers, for the period of time prior to October 31, 2010, and then subsequently by a Labor Agreement, effective November 1, 2010 (hereinafter referred to as "prior Agreement" and "Agreement" respectively). *Id.* ¶¶ 12, 13.

Under the prior Agreement, individual employees' vacation pay was calculated based upon each employee's date of hiring. (Compl. ¶ 13.) Under the new Agreement, vacation pay for all employees was calculated on a calendar year basis. *Id.* ¶ 14.

In their Complaint, the plaintiffs allege that the defendant failed to adequately provide or to compensate them for vacation time which had accrued under the prior Agreement, and that such alleged failure amounts to a breach of contract and a violation of the South Carolina Payment of Wages Act, SC Code § 41-10-10, *et. seq.*

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009). Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

## **DISCUSSION**

The defendant contends that the plaintiffs' claims should be dismissed as having been preempted by Section 301 of the Labor Management Relations Act ("LMRA") of 1947, as amended, 29 U.S.C. §185(a). Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). To ensure uniform interpretation of collective bargaining agreements ("CBA") and to protect the power of arbitrators, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 219 (1985), Section 301 has been found

to "displace entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation omitted). In Section 301 cases federal law applies, "which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957).

Section 301 preempts state law claims when their resolution depends upon the meaning of the CBA, or when resolution of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 773 (4th Cir.1998) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988), and *Allis-Chalmers*, 471 U.S. at 213 (1985)); *Anselmo v. W. Paces Hotel Grp., LLC*, 2011 WL 1049195, at *5 (D.S.C. Mar. 18, 2011). "[I]t is the legal character of a claim, as independent of rights under the [CBA] (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (internal citations and quotations omitted). Section 301 does not preempt state contract rights that are independent of a [CBA], *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987), or "nonnegotiable rights conferred on individual employees as a matter of state law," *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 247-48 (4th Cir.1997) (citing *Livadas*, 512 U.S. at 123).

In this present case, the matter does not even feel like a close call, frankly. The United States Supreme Court has stated directly:

> Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be

> resolved by reference to uniform federal law, whether such
> questions arise in the context of a suit for breach of contract or
> in a suit alleging liability in tort.

*Allis-Chalmers Corp.*, 471 U.S. 202, 211.  It is plain from the Complaint that whether the plaintiffs are owed any compensation for vacation time requires consideration of "what the parties to [the] labor agreement agreed."  *Id.*  Indeed, the Complaint implies that, at a minimum, an interpretation of the various vacation and wage-related provisions of the CBA would be necessary to determine how to appropriately apply as credits all payments or other compensation provided to the plaintiffs by the defendant.  (Compl. ¶¶ 4-6, 13-14.)  In other words, it is necessary to determine whether those payments met the requirements of either or both of the two Agreements.

The plaintiffs respond that no interpretation of the Agreement is necessary, however.  The plaintiffs contend that "there is no dispute between the parties as to the interpretation of the Labor Agreements."  (Pl. Resp. at 4.)  The plaintiff states further,

> The Labor Agreements are clear: Plaintiffs will be
> compensated for vacation time earned.  What is also clear, is
> that Defendants, in implementing a new labor agreement, did
> not compensate Plaintiffs for vacation time earned.  Defendant
> cannot present any interpretation of the Labor Agreement that
> would have allowed Defendants to withhold compensation for
> vacation time earned and owed to the Plaintiffs.

*Id.*  Of course, that is a useful view of the lawsuit – that there is no dispute over the meaning of the Agreements.  But, the Court is not persuaded.  First, application of the agreement is precisely the sort of subject for which preemption covers.  *See Anselmo*, 2011 WL 1049195, at *5-6. Second, in advancing this argument the plaintiff is conveniently attempting to answer the ultimate question – the meaning and effect of the Agreements.

Precisely because the Complaint suggests some resolution of conflict between a new and preexisting vacation policy, pursuant to respective CBAs, an interpretive exercise is implicated.  (See Compl. ¶ 4.)

The plaintiff's own citation to the Fourth Circuit Court of Appeals decision, in *Barton v. House of Raeford Farms*, 745 F.3d 95 (4th Cir. Mar. 11, 2014), proves it:

> It is therefore apparent that the plaintiffs' claims under the S.C. Wages Act are *nothing other than a disagreement with Columbia Farms' interpretation of how to calculate their "hours worked" under the CBA*, including the two unpaid breaks provided for in the CBA.
>
> . . .
>
> While both sides have looked to a range of evidence to resolve the dispute -- e.g., the representations at orientation, the Employee Handbook, and the practices followed -- the *question at bottom remains what the CBA intended*.  For this reason, we conclude that the dispute under the S.C. Wages Act necessarily implicates an interpretation of the CBA and therefore that the proceedings are preempted by § 301 of the LMRA.

*Id.* at 106 (emphasis added).

The meaning of the "vacation policy pursuant to the Labor Agreement" is squarely at issue, here.  (See Compl. ¶ 5.)  The plaintiff emphasizes the United States Supreme Court's admonition that "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished" and that Section 301 does not preempt "nonnegotiable rights" such as the payment of wages.  *Livadas v. Bradshaw*, 512 U.S. 107,123-24 (1994).  But, the Complaint speaks of more than mere consultation and rote payment.  Instead, the plaintiffs are arguing that pursuant to the prior policy the "Defendants owe Plaintiffs vacation pay

accrued prior to October 31, 2010." (Compl. ¶ 9.) It is further averred that the "new labor agreement of November 1, 2010, adversely affected Plaintiffs." *Id.* ¶ 10. The Complaint alleges that the manner in which the vacation pay is *calculated* was altered and, further, that such accrued vacation time should be treated "under the prior labor agreement." (Compl. ¶¶ 4-5, 7.) The Court does not understand how the case amounts to anything other than a resolution of which agreement applies and for which period of time. And, the fact that the general payment of wages is a statutory and, therefore, nonnegotiable right, insofar as wages *due* are nonnegotiably owed, the calculation of such payments, with respect to vacation pay for example, is a matter of contract negotiation – thus the modification made to the Agreement at issue here. This District and Circuit have concluded expressly as much. *See Anselmo v. W. Paces Hotel Grp.*, LLC, 2011 WL 1049195, at *10 (D.S.C. Mar. 18, 2011) (concluding that although the South Carolina Payment of Wages Act creates a right to be paid wages that "right is based upon an employment contract"; "the contract is the source of the right to wages . . . not the South Carolina statute"); *see also Briggs v. Heinz*, 1989 WL 27483, at *1 (4th Cir. Mar.17, 1989) ("The employees' claim against Heinz was based on a provision for personal leave days created by the collective bargaining agreement. West Virginia law did not create the right to be paid for such leave.") The plaintiffs have certainly not explained otherwise.

Because the plaintiff's breach of contract and South Carolina Payment of Wages Act, *see id.*, claims are "inextricably intertwined with consideration of the terms of the [Labor Agreements]" and would require a fact-finder to "consult and interpret multiple provisions of the [Labor Agreements]," their state-law claim for breach of contract is preempted by Section 301. *See Allis-Chalmers*, 471 U.S. at 213; *Elswick v. Daniels Electric*

*Inc.*, 787 F. Supp. 2d 443, 447-48 (S.D. W. Va. 2011).

When resolution of a state law claim depends substantially on the analysis of a collective bargaining agreement's terms, it must either be treated as a claim under Section 301, subject to dismissal if the collective bargaining agreement's grievance and arbitration procedures have not been followed, or alternatively be dismissed as preempted. *See Barton*, 745 F.3d at 107.  The Court will consider which result is appropriate here.

## II.     Grievance and Futility of Amendment

The defendant contends that any amendment to add a Section 301 claim here, in replacement of the state law ones, would be futile because the plaintiffs have not grieved their claims pursuant to the Agreement.  "[T]he general rule is that '[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301.'"  *Elswick v. Daniels Electric Inc.*, 787 F. Supp. 2d 443, 448 (S.D. W. Va. 2011) (citing *Clayton v. Int'l Union, UAW*, 451 U.S. 679, 681 (1981)).

The Agreement here outlines a mandatory five-step grievance process, including arbitration. (ECF No. 13-3 at 10-11.)  Neither in Complaint, nor on response, do the plaintiffs claim to have exhausted any part of it.  (Pl. Resp. at 7; see generally Compl.) Instead, the plaintiffs retreat to arguments concerning the arbitrability of the case. But, the plaintiffs' exhaustion of the grievance procedure would only turn on the arbitrability of the matter if the plaintiffs had participated in the previous steps.  They have not mentioned as much.  *See id.*  But, the defendant has included a Declaration that indicates that a grievance was indeed filed but abandoned upon appointment of an arbitrator.  (ECF No.

13-2 at 2.) Accordingly, the Court would treat the preliminary steps as having been exhausted and consider whether the case is also and finally subject to arbitration according to the Agreement. The plaintiffs contend it is not.

On the language of the present Agreement, there is no dispute that the Court, as opposed to an arbitrator, must determine arbitrability.[1] *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Carson v. Food Giant, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). The plaintiffs' claims clearly are of the type contemplated by the grievance procedure, which covers matters that "arise concerning meaning and/or application of this agreement . . . ." (Declaration of S. Douglas Lowe, Attachments 1 and 2, Article 8, §1.) The plain meaning of the Agreement controls. *See E.I. DuPont de Nemours & Co. v. Martinsville Nylon Employees' Council Corp.*, 1996 WL 8450, at *2 (4th Cir. 1996). Of course, the Court has already ruled that resolution of the pled claims necessitates consideration of both the meaning and application of the Agreement(s), as the above language requires. As such, the plaintiffs were required to exhaust the grievance procedure provided under Article 8, up to and including final and binding arbitration. *Id.*

In a single sentence the plaintiffs additionally complain as follows: "Furthermore, it is very apparent that union [sic] breached its statutory duty when it abandoned the grievance without notification or explanation to members." (Pl. Resp. at 8.) In this action, and as far as the Court has been informed, in any other action, the plaintiffs have not filed suit against their union for breach of a duty of fair representation or other similar cause.

---

[1] The plaintiffs, through some clever positioning in their brief have suggested somehow that the "clear and unmistakable" test employed to determine whether arbitibility, itself, may be submitted to arbitration, *see Carson*, 175 F.3d at 329, is also applicable in the court's own determination of arbitibility. It is not.

*See Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002). And, an employee "'must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.'" *Id.* (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 67 (1981)). So, the plaintiffs may not casually accuse their union, a non-party to this case, of malfeasance and, thereby, think to escape their obligation in exhaustion.

Amendment would be futile, therefore, for want of exhaustion. The Court, therefore, is constrained to dismiss the claims as preempted.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED**. (ECF No. 13.) The case is hereby dismissed.

IT IS SO ORDERED.

/s/ Bruce Howe Hendricks
United States District Judge

October 31, 2014
Greenville, South Carolina